UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
ROBERTO RODRIGUEZ,

               Petitioner,

        -against-

THOMAS LaVALLEY, Superintendent,
Clinton Correctional Facility

               Respondent.
-------------------------------------------------------x

**MEMORANDUM & ORDER**

13 CV 5811 (RJD)

DEARIE, District Judge.

Before the Court is the application of petitioner Robert Gonzalez for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Petitioner was convicted on January 26, 2009, after a jury trial in Supreme Court, Kings County, of Murder in the Second Degree (N.Y. Penal Law, or "P.L.," § 125.25[1]), Robbery in the First Degree (P.L. §160.15[2]), and Criminal Possession of a Weapon in the Second Degree (P.L. §265.03[3]). He is serving a sentence of 50 years to life.[1] After petitioner and his co-assailants robbed their victim in an apartment building lobby, they chased him down the street as he sought to escape and shot him multiple times in the back.

The petition for habeas relief advances several overlapping claims. Three relate to

-------------------------------------------------------

[1] Petitioner was sentenced as a second felony offender to 25 years to life on the murder count, 25 years plus 5 years of post-release supervision on the robbery count, and 15 years plus five years of post-release supervision on the weapon possession count. The sentences on the weapon possession and robbery counts run concurrently but consecutively to the murder count.

petitioner's potential intoxication defense: he alleges that counsel was ineffective for failing to investigate witnesses relating to that defense, that the trial court erred by failing to give an intoxication instruction, and that the evidence was legally insufficient on the intent element of second-degree murder. Petitioner also combines these allegations under the umbrella claim that he was denied his right to a fair trial.

Petitioner also alleges that counsel was ineffective because: his cross-examination of the state's witnesses was inadequate, he failed to move for a severance, he delivered an inadequate summation, and he failed to adequately advise petitioner of the advantages of a plea and the full sentencing consequences of conviction after trial. Finally, petitioner challenges the lawfulness and constitutionality of his sentence.

As will be discussed, petitioner has not met the formidable burden required for the grant of habeas relief because he fails to show a factual or legal basis to disturb the state court rulings denying these claims in the first instance. Accordingly, the application for habeas relief is denied and the petition is dismissed.

## BACKGROUND

The prosecution's case against petitioner was quite strong, including eyewitness testimony from the surviving robbery victim, a police officer who witnessed the chase and shooting, video surveillance of the robbery, and forensics connecting petitioner to the murder weapon. In brief, the trial evidence established the following:

At approximately 1:00 a.m. on December 2, 2006, Dennis Mack and Randon Raines, heading out to a club for the night, pushed the elevator button on the twelfth floor of the apartment building at 130 Moore Street, Brooklyn, while their friend Torey Branch waited for

2

them outside in a car. The elevator arrived, its doors opened, and as Raines and Mack entered, petitioner, exiting the elevator, bumped into Mack. Raines asked for an apology, petitioner refused, and heated words were exchanged. Raines and Mack then took the elevator down to the lobby.

As Raines and Mack exited into the lobby, three men emerged from the nearby staircase: petitioner, with no weapon visible; Christopher Gray, holding a .38 caliber revolver; and Anthony Montalvo, carrying a metal pipe. The three assailants forced Raines and Mack to empty their pockets and give up their watches and other belongings. Petitioner punched Raines and poked him in the stomach with what Raines believed was a gun in petitioner's sweatshirt pocket. Petitioner hit Mack in the face and taunted both men about the incident on the twelfth floor. As the three robbers talked about taking Raines and Mack outside, Mack pushed Gray and ran into the street, using the lobby's rear exit, and petitioner and Gray chased after him.[2]

New York City Police Officer Tomas Castro, who was on foot patrol nearby, saw Mack running from petitioner and Gray, and followed; as Castro turned a corner, he saw, first from a side view and then from behind, an Hispanic man (later identified as petitioner) and a black man (later identified as Gray) firing at Mack. Castro could see that petitioner's weapon was a semi-automatic pistol and Gray's a revolver. Castro yelled, "Police, don't move," and the shooters stopped and looked back in his direction; it was evening but the street lights were on and Castro saw both faces clearly. In response to Castro's announcement, petitioner placed his gun in his

---

[2] Raines also fled: he shoved Montalvo and ran out the exit on the other side of the lobby. He heard the bullets but did not see the shooting.

right pocket and raised his left hand but then "frisbeed" his gun (Tr. 154)[3] onto the roof of a

nearby building and ran. Castro followed for ten to fifteen feet and made the arrest.[4]

## DISCUSSION

### GENERAL HABEAS STANDARDS

#### Threshold Requirements: Constitutional Nature of Claim, Procedural Integrity (Exhaustion, "Independent and Adequate State Law" Doctrine, and Related Procedural Concerns)

First and foremost, "federal habeas corpus relief does not lie for errors of state law."

Lewis v. Jeffers, 497 U.S. 764, 780 (1990). Rather, "28 U.S.C. §2254 allows a court to entertain

a habeas petition 'only on the ground that [an individual] is in custody in violation of the

---

[3] The word is Castro's. "Tr." refers to the trial transcript furnished electronically as Exhibits to Respondent's Answer, ECF Doc. 7-2 et seq.

[4] Pathology and forensics, of secondary importance given the eyewitness testimony, were nevertheless corroborative. No bullets were found in Mack's body: four bullets entered his back and exited the front of his chest; a fifth bullet injured a knee. The medical examiner could not determine the type of bullet that caused the injuries. After petitioner's arrest, Castro recovered from a nearby rooftop the pistol that he saw petitioner toss; it was a 9-millimeter pistol. All seven of the 9-millimeter shell casings recovered from the scene matched the recovered weapon. Finally, testing identified petitioner as a possible source of a DNA sample taken from the 9-millimeter pistol's handle.

As for codefendant Gray: he ran off after Officer Castro announced himself but was soon apprehended not far from the scene by another officer responding to Castro's radio call. Gray was convicted of the same crimes as petitioner at the same trial and received the same sentence. Gray's conviction was reversed, however, because the Appellate Division found that the lineup identifications were the fruit of an arrest based on less than probable cause and should have been suppressed. People v. Gray, 92 A.D.3d 892 (2d Dep't), lv. app. denied, 19 N.Y.3d 864 (2012). At his retrial, he was again convicted of second-degree murder, first-degree robbery, and second-degree weapons possession, and then sentenced to 25 years to life on the murder count, 25 years plus 5 years of post-release supervision on the robbery count, and 15 years plus 5 years of post-release supervision on the weapon possession count, with the weapons and murder sentences to run consecutively. The third assailant, Anthony Montalvo, died before he could be apprehended.

4

*Constitution or laws or treaties of the United States.*'" Garner v. Lee, 908 F.3d 845, 860 (2d Cir. 2018) (quoting, 28 U.S.C. § 2254(a)) (emphasis added).

Second, before bringing bona fide federal claims to the habeas court, the petitioner must first exhaust those claims by fully and fairly presenting the substance of each to the highest state court. See 28 U.S.C.§ 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that [ ] the applicant has exhausted the remedies available in the courts of the State."); Picard v. Connor, 404 U.S. 270, 275 (1971) ("federal habeas corpus statute . . . embodies the long-established principle that a state prisoner seeking federal habeas review of his conviction ordinarily must first exhaust available state remedies"); Daye v. Attorney Gen. of State of New York, 696 F.2d 186, 191 (2d Cir. 1982) ("In order to have fairly presented his federal claim to the state courts, the petitioner must have informed the state court of both the factual and the legal premises of the claim he asserts in federal court").

The habeas statute also recognizes that where "there is an absence of available State corrective process" or "circumstances that render such process ineffective to protect the [petitioner's] rights," the exhaustion requirement may be waived. 28 U.S.C. §2254(b)(1)(B). The statute also provides that "[a]n application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2).

Third, with respect to exhausted, bona fide federal claims, the pool of cognizable claims shrinks further. Under a longstanding principle of habeas jurisprudence, "a federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule." Davila v. Davis,

5

137 S. Ct. 2058, 2064 (2017); <u>Coleman v. Thompson</u>, 501 U.S. 722, 729 (1991) (habeas claim is procedurally barred if it was decided "on a state law ground that is independent of the federal question and adequate to support the judgment."). This principle "ensure[s] that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism." <u>Martinez v. Ryan</u>, 566 U.S. 1, 9 (2012). Importantly, the bar applies "even where the state court has also ruled in the alternative on the merits of the federal claim," which is often the case. <u>Velasquez v. Leonardo</u>, 898 F.2d 7, 9 (2d Cir. 1990). <u>See also</u> <u>Harris v. Reed</u>, 489 U.S. 255, 264 n. 10, (1989) ("a state court need not fear reaching the merits of a federal claim in an *alternative* holding") (emphasis in original).

There is some give, however, in this rule. <u>See</u> <u>Garner v. Lee</u>, 908 F.3d 845, 859 (2d Cir. 2018) ("While a state court may rest its judgment on a state procedural bar if it rejects the merits of a federal claim *only in the alternative*, . . . the Supreme Court has admonished that, when in doubt, courts should presume that the state court adjudicated the claim on the merits") (emphasis in original), <u>cert.</u> <u>denied</u>, 139 S. Ct. 1608 (2019). In short, the state court must express the nature of its holding unambiguously. <u>See id</u>. ("for this procedural default rule to apply, the state court must have clearly and expressly stated that its judgment rested on a state procedural bar. . . . In other words, it must be 'clear from the face of the opinion' that the state court's decision rested on a state procedural bar.") (internal quotations, citations, and alterations omitted).

"To bar habeas review ... the state court's decision must rest not only on an independent procedural bar under state law, but also on one that is adequate to support the judgment." <u>Murden v. Artuz</u>, 497 F.3d 178, 191 (2d Cir. 2007) (internal quotation and citation omitted), <u>cert.</u> <u>denied</u>, 552 U.S. 1150 (2008). A state procedural bar "is 'adequate' if it 'is firmly established and regularly followed by the state in question' in the specific circumstances presented." <u>Id</u>.

(quoting, <u>Monroe v. Kuhlman</u>, 433 F.3d 236, 241 (2d Cir. 2006)). The most common state law procedural ground that arises, the requirement that an issue be preserved by contemporaneous objection, <u>see generally</u> N.Y. Criminal Procedure Law §470.05(2), has been held to be a firmly established and regularly followed rule for these purposes. <u>Richardson v. Greene</u>, 497 F. 3d 212, 217-18 (2d Cir. 2007); <u>Petronio v. Walsh</u>, 736 F. Supp. 2d 640, 653 (E.D.N.Y. 2010).[5] Another frequently encountered state law ground, the rule that a claim based upon a matter of record at trial should be raised on direct appeal and cannot be pursued in a motion for collateral relief under N.Y. CPL §440.10, has also been held to be firmly established and regularly followed. <u>Dominique v. Artus</u>, 25 F. Supp.3d 321, 333 (E.D.N.Y. 2014) (collecting cases).

Importantly, although "adequacy is itself a federal question," <u>Lee v. Kemna</u>, 534 U.S. 362, 375 (2002) (internal quotation and citation omitted), "[habeas courts'] function ... is not to ... peer over the shoulder of the state court judge ruling on questions of state law ... Instead ... we are to determine only whether the state ruling falls within the state's usual practice and is justified by legitimate state interests, not whether the state court ruling was correct." <u>Downs v. Lape</u>, 657 F.3d 97, 101 (2d Cir. 2011) (internal quotations and citations omitted), <u>cert</u>. <u>denied</u>, 566 U.S. 1014 (2012); <u>Lewis v. Jeffers</u>, 497 U.S. 764, 780 (1990) ("federal habeas corpus relief does not lie for errors of state law."). Finally, the "independent and adequate state ground" bar may be bypassed only if a petitioner demonstrates either "cause" for failing to comply with the state rule and "actual prejudice" if the claim is not reached, or that a lack of federal review will result in a fundamental miscarriage of justice because he is actually innocent. <u>Harris v. Reed</u>,

---

[5] In the context of challenges to the legal sufficiency of the evidence, this rule requires that a defendant identify the specific evidentiary deficiency rather than merely move for dismissal at the close of the state's case. <u>People v. Hawkins</u>, 11 N.Y.3d 484, 492 (2008).

489 U.S. 255, 262 (1989); Wainwright v. Sykes, 433 U.S. 72, 87 (1977). Most commonly,

petitioners attempt to show "cause" through a claim of ineffective assistance of counsel, but to

qualify as "cause" for this purpose the ineffectiveness claim must be independently exhausted.

Edwards v. Carpenter, 529 U.S. 446, 452 (2000). If a petitioner fails to show cause the Court

need not consider whether he would be prejudiced by the failure to reach his claim. Murray v.

Carrier, 477 U.S. 478, 498 (1986).

## Substantive Review Standards

The current habeas statute provides in relevant part as follows:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim . . . resulted in a decision that was contrary to, or
> involved an unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States.

28 U.S.C. § 2254(1), as amended by the Antiterrorism and Death Penalty Act of 1996

("AEDPA").

The Supreme Court has repeatedly explained that this statute "erects a formidable barrier

to federal habeas relief," Burt v. Titlow, 571 U.S. 12, 19 (2013), because it embodies "a

foundational principle of our federal system: State courts are adequate forums for the vindication

of federal rights . . . and are thus presumptively competent [ ] to adjudicate claims arising under

the laws of the United States." Id. at 19. Indeed, federal habeas courts "will not lightly conclude

that a State's criminal justice system has experienced the extreme malfunction for which federal

habeas relief is the remedy." Id. at 16 (internal quotations, citations and alterations omitted). See

also Virginia v. Le Blanc, 137 S. Ct. 1726, 1728 (2017) ("In order for a state court's decision to

be an unreasonable application of this Court's case law, the ruling must be objectively

8

unreasonable, not merely wrong; even clear error will not suffice") (internal quotation marks and citations omitted); Renico v. Lett, 559 U.S. 766, 773 (2010) ("AEDPA [ ] imposes a highly deferential standard for evaluating state-court rulings" and "demands that state-court decisions be given the benefit of the doubt") (internal quotations omitted); but see Brumfield v. Cain, 135 S. Ct. 2269, 2277 (2015) ("As we have also observed, however, even in the context of federal habeas, deference does not imply abandonment or abdication of judicial review, and does not by definition preclude relief.") (internal quotation marks, citation and alterations omitted).

As the Supreme Court has recently reiterated:

> The federal habeas statute ... imposes important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases. The statute respects the authority and ability of state courts and their dedication to the protection of constitutional rights. Thus, under the statutory provision at issue here, 28 U.S.C. §2254(d)(1), habeas relief may be granted only if the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of," Supreme Court precedent that was "clearly established" at the time of the adjudication. ... This means that a state court's ruling must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

Shoop v. Hill, 139 S. Ct. 504, 506–07 (2019) (internal quotations and citations omitted). Accord Orlando v. Nassau Cty. Dist. Attorney's Office, 915 F.3d 113, 121 (2d Cir. 2019) ("unreasonable application" standard of § 2254(d)(1) is a "bar [that] is not reached where fairminded jurists could disagree on the correctness of the state court's decision") (internal quotation and citation omitted). In short, "[i]f this standard is difficult to meet—and it is—that is because it was meant to be." Burt, 571 U.S. at 20 (internal quotations, citations and alterations omitted).[6]

---

[6] Although most claims involve the "unreasonable application" clause of §2254(d)(1), a petitioner occasionally invokes the "contrary to" clause, which requires that he show that the state court, when rejecting his claim, "directly contradict[ed] a holding of the Supreme Court."

Alternatively, under the less frequently invoked second branch of § 2254(d), a petitioner may seek habeas relief by challenging the factual basis of the adverse state court ruling. See 28 U.S.C. §2254(d)(2) (habeas court may overturn the state court's decision only if it was "based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceedings." Id. A "state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. 290, 301 (2010). Further, 28 U.S.C. § 2254(e)(1) provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and that the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."[7]

Finally, "[d]eciding whether a state court's decision 'involved' an unreasonable application of federal law or 'was based on' an unreasonable determination of the facts requires the federal habeas court to train its attention on the particular reasons—both legal and factual— why [the] state courts rejected a state prisoner's federal claims...and to give appropriate deference to that decision." Wilson v. Sellers, 138 S. Ct. 1188, 1191-92 (2018) (internal quotations and citations omitted). When the last state court decision is a simple affirmance, denial of leave, or otherwise not accompanied with reasons, Wilson "hold[s] that the federal

_____

Evans. v. Fischer, 712 F.3d 125, 132 (2d Cir.) (internal quotation and citation omitted), cert. denied, 571 U.S. 899 (2013).

[7] The Supreme Court and the Second Circuit have declined to address the relationship between §2254(d)(2) and §2254 (e)(1). See Brumfield, 135 S. Ct. at 2282 ("We have not yet defined the precise relationship between § 2254(d)(2) and § 2254(e)(1)") (internal quotation and citation omitted); Garguilio v. Heath, 586 Fed. App'x 764, 766 n. 1 (2d Cir. Oct. 10, 2014).

court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." Id. at 1192.

## ANALYSIS OF PETITIONER'S CLAIMS

## I.    Sufficiency and Failure to Charge Intoxication

Petitioner claims that the evidence was legally insufficient to support his conviction for murder in the second degree because there was evidence in the record from which a jury could have concluded that he was too intoxicated to form the requisite intent to kill Mack.   The claim hinges on the following colloquy during his attorney's cross-examination of prosecution witness Raines:

> Q:    And you recall…you told the district attorney's office that [petitioner] looked to be kind of high, like he was out of it, right?
> A:    Yeah.  He looked crazy.
> Q:    Excuse me?
> A:    Yeah.  I said he looked crazy.
> Q:    Looked crazy.  Was he drunk?
> A:    I don't know what he was.
>           [Objection interposed and overruled]
> Q:    You said he looked really spaced out though, right?
> A:    Yeah, his eyes.
> Q:    Yes or no?
> A:    Yes.  (Tr. 129-130).

Petitioner raised this claim in the pro se supplemental brief submitted on his direct appeal, where the Appellate Division rejected it on procedural grounds and, alternatively, on the merits.  People v. Rodriguez, 92 A.D.3d 902, 903 (2d Dep't 2012) (petitioner's sufficiency claim "is unpreserved for appellate review" and "[i]n any event, viewing the evidence in the light most

favorable to the prosecution, we find that it was legally sufficient to establish [petitioner's] guilt beyond a reasonable doubt."), lv. app. denied, 18 N.Y.3d 997 (2012).[8]

Questions of exhaustion and procedural bar aside, petitioner's sufficiency claim is plainly without merit under the applicable sufficiency standard. See generally Jackson v Virginia, 443 U.S. 307, 318-319 (1979); Cavazos v. Smith, 565 U.S. 1, 2 (2011) (reaffirming that Jackson v. Virginia controls in § 2254 context).

Under Jackson,

> the critical inquiry . . . does not require a court to ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Once a defendant has been found guilty of the crime charged, the factfinder's role as weigher of the evidence is preserved through a legal conclusion that upon judicial review *all of the evidence* is to be considered in the light most favorable to the prosecution.

Id. 443 U.S. at 318-319 (internal quotations and citations omitted) (all emphases supplied by *Jackson* Court).

In short, under Jackson, "a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id. at 326. Where the state has first rejected the sufficiency claim on the merits, federal habeas deference is doubled. Cavazos, 565 U.S. at 2 (the "the deference to

---

[8] The Appellate Division decision is the relevant state court decision for AEDPA deference purposes. Wilson, 138 S. Ct. at 1191-92.

state court decisions required by § 2254(d)" is to be "applied to the [ ] already deferential review" of <u>Jackson</u>").

Applying the <u>Jackson</u> presumptions to the evidence reviewed above essentially ends the sufficiency analysis. The relevant inquiry is whether *any* rational juror could conclude that chasing an unarmed man in flight and firing multiple bullets at his back demonstrate an intent to kill. To even pose the question is to expose its required affirmative answer. <u>See, e.g.</u>, <u>United States v. Ashburn</u>, 2015 WL 5098607, at *17 (E.D.N.Y. Aug. 31, 2005) (under New York law, a jury may infer intent to kill where defendant shot his victim in the back at close range while victim was fleeing a robbery attempt) (citing <u>People v. Woods</u>, 126 A.D.2d 766, 767 (2d Dep't 1987)). The Raines testimony on which petitioner relies may be food for speculation, but it is not enough to preclude *any* rational jury from finding that petitioner was sufficiently sober to form the intent to kill.

The Appellate Division came to the same conclusion when denying petitioner's separate claim that the trial court erred in failing to give an intoxication instruction. <u>Rodriguez</u>, 92 A.D.3d at 903 ("Viewing the intoxication evidence in the light most favorable to [petitioner], we find that it was insufficient to allow a reasonable person to entertain doubt as to the element of intent"). Here, respondent argues that the failure-to-instruct claim is unexhausted because petitioner did not present it to the state court in terms invoking a federal right. Respondent appears to be correct—and indeed, it is doubtful that petitioner could have framed the failure to give an intoxication instruction on this record as implicating his federal fair trial or due process rights; in any event, the Court here exercises its statutory to deny unexhausted claims on the merits. <u>See</u> 28 U.S.C. §2254(b)(2).

Plainly, the Appellate Division's rejection of the claim was not an unreasonable application of Supreme Court law. There is no Supreme Court holding requiring that an intoxication instruction be given. See Montana v. Egelhoff, 518 U.S. 37, 39-56 (1996) (denying due process challenge to state statute providing that voluntary intoxication "may not be taken into consideration in determining the existence of a mental state which is an element of [a criminal] offense," noting, inter alia, that the state rule "comports with and implements society's moral perception that one who has voluntarily impaired his own faculties should be responsible for the consequences."). Further, federal law on jury instruction challenges sets a standard not remotely met here. See generally Cupp v. Naughten, 414 U.S. 141, 147 (1973) (on habeas challenges to jury instructions, the question is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process"); Henderson v. Kibbe, 431 U.S. 145, 155 (1977) ("An omission…is less likely to be prejudicial than a misstatement of the law").[9]

---

[9] Of note, intoxication is not a defense under New York law but may be offered to negate an element of the crime charged. See P.L. §15.25. As correctly stated in the Appellate Division's decision, under New York law, "[a]n intoxication charge is warranted if, viewing the evidence in the light most favorable to the defendant, there is sufficient evidence of intoxication in the record for a reasonable person to entertain a doubt as to the element of intent on that basis, and "[a] defendant may establish entitlement to such a charge if the record contains evidence of the recent use of intoxicants of such nature or quantity to support the inference that their ingestion was sufficient to affect defendant's ability to form the necessary criminal intent." People v. Sirico, 17 N.Y.3d 744, 745 (2011) (internal quotations and citations omitted). Notably, in rejecting petitioner's request for the instruction, the trial court found that "we have no testimony" as to such matters as "the number of drinks," "[t]he period of time during which they were consumed, the lapse of time between the consumption and the event at issue" or "police officers' comments that the defendant had glassy eyes [or] alcohol on his breath." Tr. 467. For these reasons, the Appellate Division's decision is not factually unreasonable within the meaning of 28 U.S.C.§2254(d)(2).

14

In sum, neither the sufficiency nor failure-to-instruct claim presents a basis for federal habeas relief.[10]

## II.     Ineffective Assistance of Counsel

### A.     Counsel's Handling of Petitioner's Possible Intoxication Defense

Petitioner claims that counsel failed to adequately investigate a possible intoxication defense and for that reason did not present any intoxication evidence at trial. After a <u>Rhines</u> stay,[11] petitioner pursued this claim in a second motion to vacate in Supreme Court, Kings County, where he was appointed counsel and granted an evidentiary hearing.

The court heard testimony from the two individuals whom petitioner claims his attorney should have called at trial to establish intoxication—his sometime girlfriend Amanda Rivera and close friend Angel Rivera (no relation); petitioner's trial attorney, Kleon C. Andreadis, Esq., testified in opposition. The court denied the motion to vacate on November 24, 2015 orally,

---

[10] Separately, petitioner challenges the murder, robbery and weapons possession convictions as against the weight of the evidence. Weight-of-the-evidence claims, however, do not involve federal law and are not cognizable here. <u>Garrett v. Perlman</u>, 438 F. Supp. 2d 467, 470 (S.D.N.Y. 2006). In any event, the Appellate Division, which does review for weight, was "satisfied that the verdict of guilt was not against the weight of the evidence." <u>Rodriguez</u>, 92 A.D.3d at 903.

[11] During oral argument via videoconference before Judge Gleeson on March 31, 2014, petitioner first raised this additional claim. Judge Gleeson proposed staying the case under <u>Rhines v. Weber</u>, 544 U.S. 269 (2005), while petitioner pursued the claim in state court; he also considered appointing counsel. In supplemental submissions, the parties disputed whether petitioner had shown good cause for not bringing the new claim sooner. Judge Gleeson also directed petitioner's trial counsel to address the ineffectiveness allegation. By Order dated May 20, 2014, Judge Gleeson concluded, in relevant part, as follows: "Based in part on [trial counsel's] statement, I believe it is unlikely that [petitioner] will be able to demonstrate that it is appropriate for me to stay this case and appoint him counsel. ... A stay would *not* be appropriate if the new claim is meritless." ECF No. 15 (emphasis in original). Judge Gleeson gave petitioner an additional opportunity to weigh in on the merits, and by Order dated October 2, 2014, concluded that "the best approach is to permit [petitioner] to pursue the [new] claim in state court." ECF No. 18.

15

based on credibility findings, and explained that ruling in a 12-page memorandum issued January 8, 2016. People v. Rodriguez, Dec.& Order, 10636-06 (Sup. Ct. Kings Co. Jan. 8, 2016) (Del Giudice, J.) (ECF 30-5).

Both Amanda Rivera and Angel Rivera testified, in substance, that they were with petitioner at a party in the hours leading up to the crime and saw him consume multiple large foam cups of straight Hennessey brandy, smoke high-grade marijuana, and take ecstasy and that by midnight (the crimes occurred around 1 a.m.) petitioner was disoriented, unbalanced on his feet, and slurring his words.

By contrast, Andreadis testified that petitioner did not look intoxicated on the lobby surveillance video and that the facts indicated that the crime was intentional and well-planned: among other things, after the encounter with Mack on the 12th floor, petitioner had the presence of mind to use his telephone to recruit two friends and to wait in the lobby for Mack and Raines to arrive. Andreas also observed that in the trial testimony of arresting Officer Castro, petitioner did not stumble and had the presence of mind to throw his gun before being arrested. Still, Andreadis testified that when petitioner told him he had been drinking and ingesting drugs at a party before the crime occurred, he instructed him to furnish names and contact information of any relevant witnesses to have those individuals contact Andreadis directly. Andreadis believes that petitioner gave him only the first name of one individual without contact information, and that he received a voicemail from another, which he returned by leaving a voicemail message that was not returned. Andreadis advised petitioner that he (petitioner) would be the best witness as to his intoxication but petitioner did not want to testify.

In denying the motion to vacate, the court found Amanda Rivera "to be unreliable and to lack credibility," Rodriguez, slip. op. at 6, and found that Angel Rivera "is also unreliable and

16

lacks credibility." Id. at 7.  The court noted, inter alia, each witness's close relationship to petitioner, the degree to which their testimony was tailored to support petitioner, and inconsistencies exposed during cross-examination.  Conversely, the court found that the relevant features of Andreadis's testimony were "consistent, reliable, and worthy of belief," noting that Andreadis was "a distinguished member of the bar who has appeared before this court on numerous occasions," and that "[d]espite [petitioner's] attorney's best efforts, Mr. Andreadis's testimony was not impeached. Id. at 9.  The court concluded that petitioner failed to establish ineffective assistance under both federal and New York law.  Id. at 9-12.[12]

This branch of petitioner's ineffectiveness claim does not establish a basis for habeas relief.  Under long-established standards, to show that he was denied his Sixth Amendment right to the effective assistance of counsel, petitioner bears the considerable burden of showing that "counsel's representation fell below an objective standard of reasonableness," Strickland v. Washington, 466 U.S. 668, 688 (1984), and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.  On the deficiency prong, "the[ ] inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Id. at 688.  The "court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct" and "must [ ] determine whether the [challenged actions or decisions] were outside the wide range of professionally

---

[12] The parties report that on March 6, 2017, the Appellate Division denied petitioner's application for leave to appeal the Supreme Court's denial of his second motion to vacate.  The 440 court's decision, therefore, is the relevant opinion for §2254 (d) purposes.  See Wilson, 138 S. Ct. at 1191-92.

competent assistance." Id. at 690.

To prevail on an ineffectiveness claim that the state court has rejected on the merits, a petitioner must show that "the state court applied Strickland to the facts of his case in an objectively unreasonable manner." Woodford v. Visciotti, 537 U.S. 19, 25 (2002). This is a formidable burden: while "[s]urmounting Strickland's high bar is never an easy task," Padilla v. Kentucky, 559 U.S. 356 (2010), "[e]stablishing that a state court's application of Strickland was unreasonable under §2254(d) is all the more difficult [because] [t]he standards created by Strickland and §2254(d) are *both* highly deferential, and when the two apply in tandem, review is doubly so." Harrington v. Richter, 562 U.S. 86, 105 (2011) (internal quotation and citation omitted) (emphasis added). See also Cullen v. Pinholster, 563 U.S. 170, 190 (2011) ("review of [state court]'s decision is ... *doubly deferential* [because] [w]e take a highly deferential look at counsel's performance [under Strickland] through the deferential lens of §2254(d)") (internal quotations and citations omitted) (emphasis added).

The Strickland standard, the Supreme Court has reminded district courts, is "a general one" and, therefore, the "range of reasonable applications is substantial." Harrington, 562 U.S. at 105. Further, "habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d)." Id. The difference is crucial: "[w]hen §2254(d) applies, the question is *not* whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied Strickland's deferential standards." Id. (emphasis added). See also Pinholster, 563 U.S. at 196 (attorney need not state his reasons; rather, the court must "affirmatively entertain the range of possible reasons [ ] counsel may have had for proceeding as [he] did") (internal quotation marks omitted); Greiner v. Wells, 417 F.3d 305, 320 (2d Cir. 2005) (court must "look for legitimate justifications for [counsel's]

18

conduct, including justifications transparent on the record and justifications offered by counsel").

Further still, here, the state court's decision denying the claim is highly factual and based on credibility assessments of witnesses it observed first-hand. Those findings are presumed correct and can be disturbed only by clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e); Woodhouse v. Walsh, 2015 WL 3826587, at *5 & n. 73 (S.D.N.Y. June 19, 2015) (on federal habeas, credibility-based state court determinations are entitled to presumption of correctness) (collecting additional authorities). See also Bennett v. United States, 663 F.3d 71, 85 (2d Cir. 2011) (in analogous context of 28 U.S.C. § 2255, "[i]ssues involving credibility are normally considered factual matters" and "credibility determinations" are due "special deference" because of "the superiority of the trial judge's position" to make them) (internal quotations and citations omitted).[13]

Petitioner's zeal notwithstanding, he simply has not met these highly formidable burdens for disturbing the state court's rulings. Factually, petitioner has not identified clear and convincing evidence to rebut the presumed correctness of the court's credibility findings. Legally, in light of the facts established by the credited testimony, petitioner has not shown that it was an unreasonable application of Strickland for the state court to have concluded that counsel's performance was not deficient and that, even if it was, petitioner was not prejudiced.

---

[13] Indeed, in §2255 proceedings it is Fed. R. Civ. P. 52(a) that applies. That rule provides, in pertinent part, that "[f]indings of fact, whether based on oral or other evidence, must not be set aside unless clearly erroneous, and the reviewing court must give due regard to the trial court's opportunity to judge the witnesses' credibility. Fed. R. Civ. P 52(a)(6). Construing a nearly identical earlier version of this rule, the Supreme Court explained: "when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error." Anderson v. Bessemer City, 470 U.S. 564, 574 (1985).

Alerted to the possible intoxication issue, counsel instructed petitioner to furnish him with potential witness names and contact information or to instruct those individuals to contact him directly. He also explained in his hearing testimony that he doubted the intoxication theory had merit given the nature of the conduct at issue (chasing a man in flight and shooting him in the back).

As discussed, when applying <u>Strickland</u> under §2254(d), "the question is *not* whether counsel's actions were reasonable. . . [but rather] whether there is any reasonable argument that counsel satisfied <u>Strickland's</u> deferential standards." <u>Harrington</u>, 562 U.S. at 105. Here, counsel's conduct plainly satisfied <u>Strickland</u> because a readily identifiable strategy can explain the choice not to put on an intoxication defense: as counsel testified at the 440 hearing, he did not believe the defense had merit.

In any event, this branch of petitioner's claim would fail on prejudice grounds. The trial evidence establishes a course of irrefutably intentional action, and the 440 hearing exposes the suspect credibility of the proffered intoxication witnesses. Petitioner therefore cannot show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 688.

**B.** **The Remaining Grounds of Alleged Ineffective Assistance of Counsel**

*1.* *Trial-related Allegations.*

Petitioner claims that counsel was ineffective in that he failed to move for a severance from co-defendant Gray, failed to cross-examine certain prosecution witnesses, and delivered an inappropriately short summation that also mischaracterized a witness's testimony. AEDPA deference applies to this Court's review because petitioner raised these claims in his appellate

brief and the Appellate Division rejected each on the merits under both federal and state standards. Rodriguez, 92 A.D.3d at 902. The state court concluded that petitioner "was not deprived of the effective assistance of counsel as a result of his trial counsel's failure to move for a severance," that petitioner's "disagreement with his trial counsel's tactics on cross-examination [does not] render the representation less than meaningful," and that petitioner's complaint about his lawyer's summation "is without merit." Id.

Petitioner has not met the standard required to disturb these Appellate Division rulings.

**a) Severance**

Petitioner complains that counsel for codefendant Gray sought, through cross-examination and argument to the jury, to establish that the bullets that killed Mack came from petitioner's pistol rather than Gray's revolver, and that for this reason his lawyer was ineffective in failing to move for a severance. The Appellate Division did not unreasonably apply Supreme Court law when rejecting this claim because a motion for severance likely would have been denied, so counsel was not ineffective for not making it.

Under New York law, a trial judge may "in its discretion" sever jointly charged defendants "for good cause shown," which includes "a finding that a defendant . . . will be unduly prejudiced by a joint trial." N.Y. Crim. Pro. §200.40(1). Further, emphasizing the requirement of "*undue* prejudice," in Section 200.40(1), People v. Mahboubian, 74 N.Y.2d 174, 183 (1989) (emphasis added by Court of Appeals), New York's highest court recognizes that "[s]ome degree of prejudice is of course inherent in every joint trial" and that "more is required" for severance. Id. at 183-84. Instead, severance is required "where the core of each defense is in irreconcilable conflict with the other and where there is a significant danger, as both defenses are portrayed to the trial court, *that the conflict alone* would lead the jury to infer defendant's

guilt." Id. at 184 (emphasis added). See also Santana v. Capra, 284 F.Supp.3d 525, 542 (S.D.N.Y. 2018) (applying Mahbouian standard when denying habeas petitioner's claim that counsel was ineffective for failing to move for severance).

A motion for severance by petitioner's counsel would have been unsuccessful because the "core" of petitioner's and of his codefendant's defenses were not irreconcilable; to the contrary, they were almost the same, as both were based on reasonable doubt and attacks on credibility. The matter about which petitioner complains—the effort by Gray's attorney to suggest that Mack was killed by bullets from petitioner's gun—was irrelevant to the question of petitioner's guilt because he and Gray were charged under acting-in-concert and aiding-and-abetting theories, see, e.g., Tr. at 457 et seq. (counsel stating no objection to court's proposed jury instructions on these theories), and the evidence strongly established that they did so act. [14]

### b) Cross-examination

With respect to the cross-examination claim, petitioner notes, correctly, that his attorney asked only one question of key eyewitness Officer Castro—namely, whether the prosecutor had shared with him Raines's statement that petitioner "looked to be kind of high." (Tr. 179). The court sustained the State's objection. Petitioner also correctly notes that that his attorney did not cross-examine an additional officer involved in the investigation or four of the witnesses who testified to ballistics and forensic matters.

"[T]he question is *not* whether counsel's actions were reasonable. . . [but rather] whether

---

[14] Within the severance branch of his ineffectiveness claim petitioner also complains that Gray's attorney argued, at sentencing, that petitioner was the initial aggressor because of the encounter on the 12th floor and should receive a harsher sentence than Gray. This allegation is not a basis for habeas relief because, inter alia, both defendants received the same sentence.

there is any reasonable argument that counsel satisfied Strickland's deferential standards."

Harrington, 562 U.S. at 105. Here, counsel's conduct plainly satisfied Strickland because readily identifiable strategies can explain the cross-examination choices. As for Officer Castro, counsel explained the strategy himself during summation: a judge had once taught him that, "it's already in the record and you can argue it to the jury. Don't ask a question. And you will notice, ladies and gentlemen, that I didn't ask a lot of questions . . . because very often on direct examination what I'm about to argue to you was already placed in the record and I didn't need to ... have them repeated for you..." (Tr. 488). Officer Castro's account of his capacity to view the events he described was thorough, rendering his testimony especially damaging. The decision *not* to have him repeat it to the jury through cross-examination is certainly a prudent strategy.

As for the other witnesses whom counsel did not cross-examine, there likewise exist reasonable strategic bases for counsel's choice: it was not worth wasting the jury's time on the minutiae of ballistics and forensics in a case that consisted principally of the compelling eyewitness accounts.

In any event, given the compelling and overwhelming evidence against him, petitioner has not demonstrated that cross-examination of any of these witnesses would have advanced his defense, much less altered the verdict. The cross-examination branch of his ineffectiveness claim therefore fails for the separate reason that petitioner cannot show Strickland prejudice.

### c) Inadequate Summation

Petitioner cannot show that the Appellate Division's rejection of the inadequate-summation branch of his ineffectiveness claim reflects an unreasonable application of Strickland. Indeed, the claim is plainly meritless. The case against petitioner was tremendously difficult to defend; although petitioner complains of the summation's brevity, counsel performed reasonably

by advancing what few strong points could be made in petitioner's favor, including that the reasonable doubt standard had to be met for each element of each charged crime, that the evidence had to be considered separately against each defendant, that the surveillance video does not show petitioner with a weapon, that there was no proven forensic link between the victim's wounds and a bullet from petitioner's gun, and that Branch (the friend waiting outside in a car) could not identify petitioner in a lineup. See generally Yarborough v. Gentry, 540 U.S. 1, 5-6 (2003) (although the "right to effective assistance extends to closing arguments...deference to counsel's tactical decisions in his closing presentation is particularly important because of the broad range of legitimate defense strategy at that stage... Judicial review ...is therefore highly deferential—and doubly deferential when it is conducted through the lens of federal habeas.").[15]

### 2. Plea-Related Allegations of Ineffectiveness

Petitioner claims that counsel failed to adequately alert him to the strength of the prosecution's case or warn him that a conviction after trial could result in consecutive sentences totaling 50 years to life. He alleges that he had been so informed he would have pled.

Petitioner detailed these allegations in an affidavit filed as part of a motion to vacate he filed in the trial court. At that court's direction, trial counsel submitted a responsive affirmation. Based on these materials, as well as an affirmation from the Assistant District Attorney who

---

[15] Petitioner also complains that his attorney mischaracterized the testimony of the DNA expert with respect to the odds of there being a match between petitioner and the DNA found on the 9-millimeter gun. Counsel stated that the testimony was that "it's as if you had the population of the earth 160 times... that [petitioner] could be included as a contributor," (Tr. 491), whereas the testimony was actually that 1out of 270 southeastern Hispanics and 1 out of 476 southwestern Hispanics could possibly have contributed to the DNA mixture. Regardless of the scope or import of the discrepancy, if any, this branch of the ineffectiveness claim fails for lack of prejudice because petitioner cannot show that but for these remarks the verdict would have been different.

prosecuted the case and the court's own recollection of the plea phase of the case as reflected in the transcript of the pre-trial proceedings, the trial court denied the claim in a Decision and Order. People v. Rodriguez, 2012 WL 6827048 (N.Y. Sup. Ct. Kings Co. Dec. 19, 2012) (Respondent's Exhibit R). The court concluded that petitioner's "self-serving allegations" were unsupported by any "further evidence" and "insufficient to meet his burden of proving that counsel's performance was ineffective." Resp. Exh. R at 4.

Further, other features of the record flatly contradicted petitioner's claims. Id. at 3-5. For example, as reflected in the pre-trial hearing transcript, see Tr. January 8, 2009, Resp. Exh. A, ECF Doc. 7-1 at 10 et seq., the court made the following announcement in the presence of petitioner[16]: "Before you call your witness, this is an important point. Counsels, we haven't started the hearing yet, haven't taken testimony. Any client want to take a chance at plea bargain because the ship is about to leave the pier? They're pulling up the gang plank." Id. at 14. (In its decision denying the motion to vacate, the court reiterated that its "practice [is] only to engage in plea negotiations prior to the commencement of a pre-trial hearing or trial." Exh. R at 4, n. 2).

The transcript indicates that there ensued "a conference between counsel and their clients" held off the record, after which petitioner's counsel and the court had the following exchange:

| | |
|---|---|
| Counsel: | Your Honor, I have conveyed the offer to [petitioner]. I have explained to him that [ ] half an hour from now this offer will no longer be available to him. |
| Court: | A couple minutes from now. |
| Counsel: | I understand once we've commenced. |
| Court: | Once the witness takes the stand. |
| Counsel: | And that he can't turn to me once we've started and somewhat into it and |

---

[16] See Tr. Jan. 8, 2009, ECF Doc. 7-1 at 3 ("Court: . . . The record should reflect that the defendants are present.")

> after hearing what may be said turn to me and say, Will you get me that deal. I've told him that will not be possible; that the only thing that will be available to him at this point would be to plead to the indictment and [the] sentence will remain open[ ] in [the Court's] discretion . . .
>
> Having counseled with him in respect to that, he's indicated to me that he wishes to proceed and go forward with the case. ECF Doc. 7-1 at 14-15.[17]

Just before starting the pre-trial hearing—and closing the plea window—the Court reiterated the pivotal nature of the moment: "Right now I can render mercy, before the trial. After the jury speaks, I dispense justice. Justice and mercy often aren't the same, just so [petitioner and his codefendant] understand that." Id.

The decision denying the motion to vacate also relies on representations made by the prosecutor and defense counsel in their affirmations that refute petitioner's claims. Andreadis attested that, inter alia, he "specifically remember[ed]" advising petitioner of the maximum sentencing possibilities upon conviction after trial. Resp. Exh. R at 4. Andreadis also noted that what "ma[d]e this case stand out" in his recollection was petitioner's unusual response to the court's plea offer; as summarized by the court, Andreadis "recalls being shocked that [petitioner], in his early twenties, would have such a flippant attitude" to the risk of additional years of incarceration. Id.[18]

---

[17] According to the affidavit of trial counsel as summarized in the decision denying the motion to vacate, "the offer" counsel conveyed to petitioner came from the court, not the prosecutor, and consisted essentially of a promise to impose sentence of no more than 25 years to life in exchange for a plea of guilty to the indictment. See Resp. Exh. 4.

[18] The affirmation of the assistant district attorney who tried the case, while not pivotal, was generally corroborative of the events recorded in the transcript or recounted by Andreadis. Among other things, the prosecutor attested that he did not engage in plea negotiations with Andreadis or petitioner, and that, during the off-the-record discussion of the court's plea offer, he reiterated to petitioner in the presence of Andreadis that he risked consecutive sentences upon conviction after trial. Resp. Exh. R. at 4.

26

Petitioner has not shown that the state court's rejection of this branch of his ineffective assistance of counsel claim was an unreasonable application of Strickland.[19]  Indeed, the applicable law and its construction are not at issue here; what petitioner challenges is the trial court's rejection of his claim factually.  On this record, however, petitioner has not shown that the court's determination was unreasonable within the meaning of the habeas statute.  Plainly, it was not unreasonable for the trial court, in rejecting petitioner's unsupported allegations, to have relied on the transcript that documents its own clear warnings to petitioner and on the detailed recollections of trial counsel in concluding that counsel did not render deficient performance.

## III.  Consecutive Sentences for Robbery and Murder was Excessive

Petitioner complains that the imposition of consecutive sentences aggregating 50 years to life constitutes cruel and unusual punishment in violation of the Eighth Amendment.  On direct appeal, he challenged his sentence as excessive only on state law grounds, a claim the Appellate Division rejected on the merits, see Rodriguez, 92 A.D.3d at 903.  Sentencing claims are generally unreviewable on federal habeas when the sentence falls within the range prescribed by state law.  See White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992).  That is the case here.[20]

---

[19] The Strickland test applies to ineffectiveness claims relating to plea negotiations.  See Lafler v. Cooper, 566 U.S. 156 (2012) (holding that when counsel's ineffectiveness results in rejection of a plea offer, Strickland prejudice test requires defendant to show reasonable probability that, with competent advice, outcome of the plea process would have been different); Missouri v. Frye, 566 U.S. 134 (2012) (holding that counsel has a constitutional duty to communicate formal plea offer to his client).

[20] Under New York law at the time petitioner committed his crimes (December 2, 2006), second-degree murder, a class A-1 felony, P.L. §125.25, carried a maximum sentence of 25 years to life. P.L. §70.00(2)(a), (3)(a)(i).  First-degree robbery, a class B violent felony, P.L. § 70.02(1)(a), §160.15, carried a maximum sentence of 25 years.  P.L. §70.02(2)(a), (3)(a).  New York law also authorized the court to direct that the sentences run consecutively. P.L. §70.25.

Although petitioner's Eight Amendment claim is unexhausted, the Court exercises its authority to assure petitioner that there was no violation of his Eighth Amendment rights. See 28 U.S.C. §2254(b)(2) (habeas court may deny unexhausted claims on the merits).

For federal habeas purposes, for sentences of a term of years, "the only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle." Lockyer v. Andrade, 538 U.S. 63, 72 (2003). The "precise contours of [the principle] are unclear, [and] applicable only in the exceedingly rare and extreme case." Id.[21] See also Thomas v. Larkin, 2013 WL 5963133, * 9 (E.D.N.Y. Nov. 7, 2013) ("successful Eighth Amendment challenges to the proportionality of a sentence have been exceedingly rare") (internal quotation marks and citation omitted); Edwards v. Marshall, 589 F. Supp. 2d 276, 290 (S.D.N.Y. 2008) ("a reviewing court rarely will be required to engage in extended analysis to determine that a sentence is not constitutionally disproportionate because the decision of a sentencing court is entitled to substantial deference") (internal quotation marks, citations and alterations omitted).

This is not that exceedingly rare case. In Lockyer, the Supreme Court held that a life sentence imposed for multiple counts of petty theft under California's three strikes law was not contrary to or an unreasonable applicable of the disproportionality principle. Id. at 73-77. The term of fifty years to life for the far more serious crimes of murder and armed robbery committed by petitioner presents a far less compelling claim of disproportionality than the claim rejected in

---

[21] To be sure, as the Supreme Court itself acknowledged that "[its] precedents in this area have not been a model of clarity," and "[i]ndeed, in determining whether a particular sentence for a term of years can violate the Eighth Amendment, we have not established a clear or consistent path for courts to follow." Lockyer, 538 U.S. at 72.

Lockyer. Petitioner's cruel and unusual punishment claim therefore fails as a basis for habeas relief.

## IV.     Fair Trial

Petitioner claims that he was denied his right to a fair trial because of the various alleged instances of ineffective assistance of counsel already discussed in this memorandum. The Court's rejection of each branch of petitioner's ineffective assistance claim therefore disposes of his fair trial claim without further discussion.

## CONCLUSION

For the reasons discussed, the application of petitioner Roberto Rodriguez for relief under 28 U.S.C. § 2254 is denied in its entirety. Further, because petitioner has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), a certificate of appealability will not issue.

SO ORDERED.

Dated: Brooklyn, New York
       August ⌗, 2019

s/Raymond J. Dearie
_____
RAYMOND J. DEARIE
United States District Judge